

ORDERED in the Southern District of Florida on April 25, 2025.

Robert A. Mark, Judge
United States Bankruptcy Court
_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                                            Case No. 24-20951-RAM

GEORGE E. ROBB, JR.,                                              Chapter 11

    Debtor.
_____/

**MEMORANDUM OPINION AND ORDER DENYING
DEBTOR'S MOTION TO DETERMINE STATE COURT
<u>JUDGMENT VOID IN VIOLATION OF THE AUTOMATIC STAY</u>**

Section 362(b)(2)(A)(v) of the Bankruptcy Code excepts from the automatic stay "the commencement or continuation of a civil action or proceeding . . . regarding domestic violence." The question before the Court is whether the domestic violence exception applies to a $25 million state court judgment entered against the Debtor after he filed his chapter 11 petition where the judgment arises from the Debtor's sexual abuse of his sister decades earlier when they were both minors.

The Debtor argues that the domestic violence exception should be narrowly construed and applied only to civil actions seeking relief from imminent, potential, or ongoing

1

harm—not to a tort action for damages arising from incidents that occurred decades ago. No doubt, applying the exception here would distinguish domestic violence tort claims from other intentional tort claims that, no matter how egregious, are subject to the automatic stay. But unusual is not the same as absurd.  By its plain and unambiguous terms, the domestic violence exception applies to any civil action "regarding domestic violence."  The Court should not, and will not, impose a limitation not contained in the clear words of the statute. The Debtor's motion to declare the state court judgment void will be denied.

## Factual and Procedural Background

The Court held a hearing on February 7, 2025 on the Motion to Determine State Court Judgment Void in Violation of the Automatic Stay Under 11 U.S.C. § 362(a)(1) [DE# 73] (the "Motion") filed by George E. Robb, Jr. (the "Debtor"), Dorothy Farrell's Response in Opposition [DE# 99], and the Debtor's Reply in Support [DE# 103].  The Court reviewed the filings, including the exhibits attached thereto, heard argument of counsel, reviewed the applicable statute and case law, and took the matter under advisement.

The underlying state court action arises from a complaint filed in February 2021 by Ms. Farrell against the Debtor in the Supreme Court of the State of New York, County of New York, Index No. 950067/2021 (the "NY Action").  In the NY Action, Ms. Farrell alleged that the Debtor—her older brother by approximately nine years—sexually abused her over one hundred times when they were both minors living in the same household.  Ms. Farrell brought state law tort claims against the Debtor.  Although the alleged sexual abuse occurred decades earlier, the NY Action was not barred by a statute of limitations because the complaint was filed pursuant to New York's Child Victims Act of 2019.  That statute provided a limited, two-year window in which previously time-barred claims for child sexual abuse could be filed.  See New York C.P.L.R. § 214-g.

Trial in the NY Action was scheduled to begin on Monday, October 21, 2024. The judge in the NY Action had previously emphasized that this was a final trial date, not subject to further adjournment. On October 18, 2024, the Friday before the scheduled trial, the Debtor emailed the New York judge's law clerk an incomplete, unfiled, and undated draft of a chapter 11 bankruptcy petition but provided no proof that he had filed for bankruptcy. That same day, the Debtor sent via FedEx a hard copy of his completed bankruptcy petition to the Clerk of this Court. The next day, Saturday, October 19, 2024, the law clerk appropriately advised the Debtor that, because there was no proof that the Debtor had actually filed a bankruptcy petition, the trial in the NY Action was going forward on Monday morning as scheduled.

At 7:28 a.m. on Monday, October 21, 2024 (the "Petition Date"), the Debtor's petition was received at the U.S. District Court across the street from the Bankruptcy Court. However, under the established protocol for delivering documents received at the District Court to the Clerk of the Bankruptcy Court, the petition was not delivered to the Bankruptcy Court Clerk's Office until later that morning, after the 9:00 a.m. start of trial in the NY Action. The petition does not have a time stamp, but there is no dispute that the Petition Date in this case is October 21, 2024. *See* the Court's Order Establishing Petition File Date [DE# 54]. In short, the petition was received, and the bankruptcy case commenced, after the start of the trial but before entry of the judgment.

Later that same morning, the Debtor appeared remotely for trial in the NY Action and advised the judge that he had filed for bankruptcy in Florida. However, the judge found that there was still no evidence of a bankruptcy filing or applicable stay and proceeded with the trial. Indeed, the Debtor did not provide the state court any further details about when, how, or whether he had actually filed his petition, and he did not state that he had sent a petition

3

via FedEx to this Court. The Debtor, presumably acting on the assumption that the bankruptcy filing stayed the trial in the NY Action, disconnected his remote appearance, did not participate in the trial, and presented no defense to Ms. Farrell's claims.

The next day, on October 22, 2024, the New York court issued a Decision After Inquest awarding Ms. Farrell $20 million in compensatory damages and $5 million in punitive damages against the Debtor. On October 24, 2024, the New York court entered Judgement in the amount of $25,012,328.77 in favor of Ms. Farrell and against the Debtor (the "NY Judgment"). A copy of the NY Judgment is attached as Exhibit N to DE# 99.

The Debtor argues that the NY Judgment is void *ab initio* because it was entered in violation of the automatic stay under section 362(a)(1). Ms. Farrell argues that the NY Action falls squarely within the exception in section 362(b)(2)(A)(v), which permits the continuation of civil actions "regarding domestic violence."

## Analysis

We know that the Debtor's bankruptcy petition was filed before the entry of the NY Judgment. The only question is whether the continuation of the NY Action was excepted from the automatic stay under section 362(b)(2)(A)(v). If so, the NY Judgment is valid.

### *The Domestic Violence Exception is Not Ambiguous*

The relevant statutory provision states: "The filing of a petition . . . does not operate as a stay . . . of the commencement or continuation of a civil action or proceeding . . . regarding domestic violence." 11 U.S.C. § 362(b)(2)(A)(v). The Debtor argues that the phrase "regarding domestic violence" is ambiguous and should be narrowly construed to apply only to actions seeking injunctive relief to prevent ongoing or imminent harm. He also relies on legislative history and statutory interpretation principles, including *noscitur a sociis* and the absurdity doctrine, to suggest that Congress could not have intended for this

4

exception to encompass tort claims for past acts. Ms. Farrell contends that the statutory language is unambiguous and encompasses civil actions seeking monetary damages for past domestic violence.

The Court agrees with Ms. Farrell and finds no ambiguity in the words of section 362(b)(2)(A)(v). First, although the term "domestic violence" is not defined in the Bankruptcy Code, courts and legal dictionaries define domestic violence to include acts of sexual abuse between household members. *See Marino v. Seeley (In re Marino)*, 437 B.R. 676, 678-79 (B.A.P. 8th Cir. 2010) (adopting the Black's Law Dictionary definition of "domestic violence" as including "assault or other violent act committed by one member of a household against another" and "infliction of physical injury . . . by . . . a member or former member of a child's household, against a child[.]"). So, utilizing this common definition, the Court finds no ambiguity in the term "domestic violence," certainly as applied to the facts of this case. Second, the Court finds no ambiguity in the phrase "commencement or continuation of a civil action or proceeding."

### *When a Statute Is Unambiguous, the Plain Meaning Governs the Court's Interpretation*

Courts interpreting statutory text must begin—and, if possible, end—with the plain meaning of the statute. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) ("[W]e begin with the understanding that Congress says in a statute what it means and means in a statute what it says there." (internal quotation marks omitted)); *Patterson v. Shumate*, 504 U.S. 753, 760 (1992) (party seeking to defeat plain meaning of the Bankruptcy Code bears an "exceptionally heavy burden[.]" (internal quotation marks omitted)); *United States v. Dawson*, 64 F.4th 1227, 1236 (11th Cir. 2023) ("If the language of the statute is clear and unambiguous, we will go no further and will employ that plain meaning."); *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001)

("We begin our construction of a statutory provision where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision."); *Harris v. Garner*, 216 F.3d 970, 973 (11th Cir. 2000) ("When the words of a statute are unambiguous, then, this first canon [of statutory construction] is also the last: judicial inquiry is complete."); *In re M.V.J. Auto World, Inc.*, 661 B.R. 186, 189 (Bankr. S.D. Fla. 2024).

The Court finds no ambiguity in section 362(b)(2)(A)(v). There is no language in the text that limits the phrase "civil action or proceeding . . . regarding domestic violence" to cases involving imminent harm or to cases only seeking injunctive relief. To read into the statute such a temporal limitation would be to rewrite the law rather than interpret it.

### *Application of Section 362(b)(2)(A)(v) to the NY Action*

Applying the statutory language to the facts of this case, the NY Action falls within the exception of section 362(b)(2)(A)(v). The NY Action is a "civil action or proceeding . . . regarding domestic violence." The NY Action was based entirely on allegations of prolonged sexual abuse by the Debtor against his younger sister, Ms. Farrell, while they were both minors living in the same household.

As described earlier, the Debtor's argument to avoid application of the exception rests primarily on whether the phrase "civil action or proceeding" should be limited to actions or proceedings to address pending or imminent harm from domestic violence. The Debtor argues that "[t]he case law, legislative history, and canons of statutory interpretation all strongly suggest that in adopting [the domestic violence exception], Congress intended to except from the automatic stay only actions or proceedings to prevent ongoing or imminent threats of 'domestic violence.'" DE# 73 at pg. 2. Upon examination, all three pillars of this argument crumble. There is no precedential case law, no legislative history, and no

6

applicable canon of construction that supports the Debtor's argument.  In short, there is no sound basis for this Court to conclude that Congress intended to limit the scope of the domestic violence exception to proceedings addressing ongoing or imminent harm.

Turning first to the case law, the Debtor cites cases applying the exception to actions addressing imminent harm.  *See In re Marino*, 437 B.R. 676 (finding that an action seeking protection under the Minnesota Domestic Abuse Act was subject to the domestic violence exception); *Ballstaedt v. Curtis (In re Ballstaedt)*, 500 B.R. 586 (Bankr. N.D. Iowa 2013) (state court order prohibiting debtor from contacting his former wife was a domestic violence injunction excepted from the automatic stay).  However, the fact that the limited published decisions applying the exception involved imminent harm does not mean that the exception is limited to those circumstances.

As for legislative history, the Eleventh Circuit has made clear: "When the import of words Congress has used [in a statute] is clear, [courts] need not resort to legislative history, and . . . certainly should not do so to undermine the plain meaning of the statutory language." *Harris*, 216 F.3d at 976 (citing three decisions of the U.S. Supreme Court in support); *Garcia v. Vanguard Car Rental USA*, 540 F.3d 1242, 1247 (11th Cir. 2008) ("[L]egislative history cannot be used to contradict unambiguous statutory text or to read an ambiguity into a statute which is otherwise clear on its face." (internal citation omitted)).

Moreover, even if the Court considered legislative history, the Debtor cites no legislative history on point to support his interpretation.  The Debtor cites first to legislative history discussing the automatic stay as a fundamental protection.  DE# 73 at pgs. 13-15.  This proposition is sound, and courts generally find that exceptions to the automatic stay should be construed narrowly.  However, section 362(b) includes twenty-nine (29) statutory exceptions to the automatic stay and a construction of an exception does not violate this

principle if it is derived from the plain language of the statute. *U.S. v. Colasuonno*, 697 F.3d 164, 174 (2d Cir. 2012) (concluding that the enforcement of a probationary sentence was excepted from the automatic stay under section 362(b)(1)'s exception for the commencement or continuation of a criminal proceeding).

The Debtor also cites to a Committee Report referring to section 362(b)(2)(A)'s stay exceptions for the establishment of paternity or actions relating to alimony, maintenance, or support. DE# 73 at pg. 15 (quoting H.R. Rep. No. 103-835, at 54 (1994)). This report referred to the 1994 amendments and has no relevance to the 2005 amendments in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which added the domestic violence exception. Finally, the Debtor cites to the House Report for BAPCPA in 2005. DE# 73 at pg. 15 (quoting H.R. Rep. No. 109-31(I), at 61 (2005)). But this report does nothing more than list the changes in section 362(b)(2)(A). There is not a single word describing the scope or purpose of the domestic violence exception. In short, legislative history offers no guidance in interpreting section 362(b)(2)(A)(v).

To be clear, this Court is not blindly adopting a textual approach to decide the issue. Even if the Court attempts to determine the purpose of the domestic violence exception, there is no guidance. The domestic violence exception was added to the Bankruptcy Code in 2005 under the BAPCPA amendments. BAPCPA's substantial revisions to the Bankruptcy Code included provisions lobbied for by the credit industry and concessions sought and obtained by consumer advocates, including several provisions protecting creditors with prepetition and post-petition claims for domestic support obligations ("DSO"). For example, BAPCPA added section 1129(a)(14) allowing confirmation of a chapter 11 plan only if the debtor has paid all post-petition DSO claims. Section 1325(a)(8) imposes a similar requirement as a condition to confirmation of a chapter 13 plan. An additional and

significant example is section 507(a)(1), which elevated pre-petition DSO claims to first-priority payment ahead of the previously first-priority payment for administrative expenses. No other prepetition claims come ahead of section 503(b) administrative expenses.

Given the several provisions in BAPCPA elevating the status and treatment of DSO claims, and in the absence of any legislative history shedding light on the problem Congress was addressing in enacting the exception, it is not possible to determine whether Congress intended to include a broad or narrow stay exception to protect victims of domestic violence. Therefore, the Court is left with the plain language of the statute.

### *The Debtor's Reliance on Other Canons of Statutory Construction Are Unavailing*

The Debtor invokes the statutory canon of *noscitur a sociis*—"a word is known by the company is keeps"—to argue that "regarding domestic violence" should be read in context with other exceptions in section 362(b)(2)(A), which relate to actions involving family law matters such as the establishment of paternity, domestic support obligations, child custody, and dissolution of a marriage. The Debtor argues that the other exceptions of section 362(b)(2)(A) each address *present* domestic issues and rights between or among family members and do not involve initiating or continuing claims for monetary damages against a debtor for alleged prepetition harm simply due to familial relation. Thus, the Debtor argues that "[t]he principle of *noscitur a sociis* strongly suggests that the phrase 'regarding domestic violence' . . . applies narrowly to actions to address or enjoin present threats of domestic violence involving members of the same household or family." DE# 73 at pg. 18.

However, *noscitur a sociis* is a tool of last resort, used only when statutory language is unclear. *See Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 307 (1961) (applying *noscitur a sociis* only after finding that a word in a statute "is a word usable in many contexts and with various shades of meaning."); *see also S. D. Warren Co. v. Me. Bd. of Envtl. Prot.*, 547

U.S. 370, 379-380 (2006) ("The argument seems to assume that pairing a broad statutory term with a narrow one shrinks the broad one, but there is no such general usage; giving one example does not convert express inclusion into restrictive equation, and *noscitur a sociis* is no help absent some sort of gathering with a common feature to extrapolate."); *In re Gawker Media LLC*, 571 B.R. 612, 620-21 (Bankr. S.D.N.Y. 2017) (applying *noscitur a sociis* only after finding that a statutory phrase was ambiguous); *In re Smale*, 390 B.R. 111, 118 (Bankr. D. Del. 2008) (same). Because the Court finds that section 362(b)(2)(A)(v) is unambiguous, the Court declines to apply the statutory canon of *noscitur a sociis*. Moreover, the fact that the first four subsections of section 362(b)(2)(A) focus on paternity, child support, and other marriage dissolution-related issues that are often pending when the bankruptcy case is commenced does not imply that the Court should apply a presently pending, imminent threat limitation to the fifth subsection's domestic violence exception.

### Applying the Plain Meaning of the Statute is Not an Absurd Result

The Debtor argues that even if there is no ambiguity in the statute, applying the plain meaning of the statute would lead to an absurd result.[1] The Court disagrees. A statutory outcome is not "absurd" merely because it is unusual or unexpected. *United States v. Nix*, 438 F.3d 1284, 1286 (11th Cir. 2006) ("There is an absurdity exception to the plain meaning rule, but it is a very narrow exception that comes into play only where the result of adhering to the plain meaning rule is not just unwise but is clearly absurd, is truly absurd, and results in an absurdity that is so gross as to shock the general moral or common sense.") (internal

---

[1] Among other arguments, the Debtor argues that the result would be absurd because applying the exception to past incidents of domestic violence would also open the door for creditors to pursue post-collection activities. This argument is based upon the incorrect premise that the exception in section 362(b)(2)(A)(v) would apply to all the subsections in 362(a), including the collection of a judgment. That is not how the statute reads. The exception only applies to 362(a)(1) which stays "the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor[.]" How could it be otherwise when section 362(b)(2) uses the phrase "the commencement or continuation of a civil action or proceeding"?

10

quotes and citations omitted). Indeed, the U.S. Supreme Court has adhered to a plain meaning rule of statutory interpretation in bankruptcy cases even when the result is harsh. *See Laine v. United States Trustee*, 540 U.S. 526, 538 (2004) ("Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding. It results from deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill." (internal quotation marks and citations omitted)); *Corn Exch. Nat'l Bank & Trust Co. v. Klauder*, 318 U.S. 434, 437-38 (1943) ("Such a construction is capable of harsh results . . . but we find nothing in Congressional policy which warrants taking this case out of the letter of the Act.").

Further, the Eleventh Circuit has cautioned against using the absurdity doctrine. *See, e.g., United States v. Garcon*, 54 F.4th 1274, 1283 (11th Cir. 2022) ("Because courts should not be in the business of rewriting legislation, we apply the absurdity doctrine only under rare and exceptional circumstances."); *id*. at 1284 ("That Congress might not have anticipated how broadly its reforms would sweep does not make those reforms absurd."); *Vachon v. Travelers Home & Marine Ins. Co*., 20 F.4th 1343, 1351 (11th Cir. 2021) (Pryor, C.J., concurring) ("[T]he absurdity doctrine does not give us license to fix substantive errors arising from a drafter's failure to appreciate the effect of certain provisions[.]" (internal quotation marks omitted)). In applying the absurdity doctrine, the Eleventh Circuit has made clear that "[t]he doctrine permits a court to 'depart from the literal meaning of an unambiguous statute . . . where a rational Congress could not conceivably have intended the literal meaning to apply.'" *Garcon*, 54 F.4th at 1283 (quoting *Vachon*, 20 F.4th at 1350).

The Debtor cites *In re Vital Pharmaceuticals, Inc*. 651 B.R. 847 (Bankr. S.D. Fla. 2023), where Bankruptcy Judge Peter D. Russin examined the Consolidated Appropriations Act of 2021 (the "Act"), which extended relief to bankruptcy debtors during the COVID-19

pandemic. *Id*. at 849. The issue was whether the Act's extension of the deadline in section 365(d)(4), from 120 to 210 days to assume unexpired commercial leases, applied to all chapter 11 cases filed before the extension sunsetted on December 27, 2022, or only to subchapter V cases. *Id*. at 850-52. The court found that, by its plain language, the extension applied only to subchapter V debtors, and not to traditional chapter 11 debtors. *Id*. at 852. Invoking the absurdity doctrine, the court held that "a rational Congress could not have conceivably intended" this result, as the extension contradicted the expedited nature of subchapter V and mainly benefited traditional chapter 11 debtors. *Id*. at 852-54. Acknowledging that it was "mindful that the absurdity doctrine should be invoked only in rare and exceptional cases[,]" the court concluded that "Congress simply made a mistake" in omitting traditional chapter 11 debtors. *Id*. at 854. The court found no conceivable reason why Congress would provide more time to subchapter V debtors, who must file plans within 90 days, than to traditional chapter 11 debtors who often require more time to make assumption or rejection decisions.

Another "absurdity" decision cited by the Debtor is this Court's decision in *In re Kaplan*, 331 B.R. 483 (Bankr. S.D. Fla. 2005), written shortly after the enactment of BAPCPA. At issue was the applicability of new section 522(p) to Florida debtors. *Id*. at 484. That section preempted state law and eliminated the homestead exemption for any interest in homestead property in excess of $125,000 acquired within 1,215 days of the bankruptcy petition. *Id*. at 485. Language in the preamble in section 522(p) reads: "*[A]s a result of electing* under subsection (b)(3)(A) [of section 522] to exempt property under State or local law[.]" 11 U.S.C. § 522(p) (emphasis added). The debtor in *Kaplan* argued that Florida is an opt-out state and, therefore, Florida debtors are not "electing" between state and federal exemptions. *Kaplan*, 331 B.R. at 485. They must apply the state exemptions.

*Id*. This literal and narrow reading was adopted by the bankruptcy court in *In re McNabb*, 326 B.R. 785 (Bankr. D. Ariz. 2005), which held that new section 522(p) only applied in non-opt-out states. *Id*. at 486. Because Arizona, like Florida, is an opt-out state, the court in *McNabb* held that these sections were not applicable to Arizona debtors. *Id*.

I found this result to be absurd and clearly contrary to express legislative history that is "replete with references demonstrating that the new homestead limitations in § 522(p) and (q) were intended to apply in all states in which debtors could previously exempt amounts in excess of $125,000." *Id*. at 487. I cited a statement in the House record "that the new homestead limitations close the 'millionaire's margin' loophole . . . that permits corporate criminals to shield their multi-million dollar homesteads" and a statement in the Senate record that "under current law, a wealthy individual in a State *such as* Florida . . . can go out . . . and invest that money in . . . a huge house, file for bankruptcy, and basically protect all their assets[.]" *Id*. at n.1; *see also id*. at 488 (quoting H.R. Rep. No. 109-31 at 15-16 (2005) regarding legislative intent of new section 522(p)).

In sum, I found "not a single shred of legislative history or commentary during the several years of debate . . . suggesting that Congress intended to apply the new caps in only a couple of non opt-out states. In fact, it is common knowledge that Florida's unlimited homestead was at the heart of the legislative debate." *Id.* at 488.

Unlike the provisions at issue in *Vital Pharmaceuticals* and *Kaplan*, the plain meaning of section 362(b)(2)(A)(v) is not absurd under the standard established by the Eleventh Circuit. As noted in the introduction of this opinion, distinguishing civil tort actions regarding domestic violence from other torts and excepting them from the automatic stay may be unusual. However, in the absence of legislative history and considering the compromises embodied in BAPCPA, the Court cannot conclude that "no rational Congress could have

conceivably intended" to except all civil actions regarding domestic violence from the automatic stay, regardless of the threat of imminent harm.

## Conclusion

The NY Action falls within the scope of section 362(b)(2)(A)(v) of the Bankruptcy Code and, therefore, the NY Judgment was not entered in violation of the automatic stay and is valid. Accordingly, the Court **ORDERS** as follows:

1. The Debtor's Motion [DE# 73] is denied.

2. The request in Ms. Farrell's Response in Opposition [DE# 99] to retroactively annul the automatic stay is denied without prejudice as moot.

###

Copies to:

Christopher R. Thompson, Esq.
Counsel for the Debtor
Burr & Forman LLP
200 S. Orange Avenue, Suite 800
Orlando, FL 32801

Peter E. Shapiro, Esq.
Counsel for Dorothy Shapiro
Shapiro Law
8551 West Sunrise Blvd., Suite 300
Plantation, FL 33322

Daniel Mullkoff, Esq. (admitted *pro hac vice*)
Counsel for Dorothy Farrell
Wang Hecker LLP
305 Broadway, Suite 607
New York, NY 10007